B25B (Official Form 25B) (12/08)

# United States Bankruptcy Court
## Northern District of Illinois

In re **THOMAS MECHANICAL CORPORATION**   Case No. **08-19687**
Debtor(s)   Chapter **11**

Small Business Case under Chapter 11

## THOMAS MECHANICAL CORPORATION'S DISCLOSURE STATEMENT,

## DATED MARCH 31, 2009

*Table of Contents*

I.   INTRODUCTION
   A.   Purpose of This Document
   B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
   C.   Disclaimer

II.  BACKGROUND
   A.   Description and History of the Debtor's Business
   B.   Insiders of the Debtor
   C.   Management of the Debtor Before and During the Bankruptcy
   D.   Events Leading to Chapter 11 Filing
   E.   Projected Recovery of Avoidable Transfers
   F.   Claims Objections
   G.   Current Financial Conditions

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND
   EQUITY INTERESTS
   A.   What is the Purpose of the Plan of Reorganization?
   B.   Unclassified Claims
      1.   Administrative Expenses
      2.   Priority Tax Claims
   C.   Classes of Claims and Equity Interests
      1.   Classes of Secured Claims
      2.   Other Classes
      3.   Class of General Unsecured Claims
      4.   Class of Equity Interest Holders
   D.   Means of Implementing the Plan
      1.   Source of Payments
      2.   Post-confirmation Management
   E.   Risk Factors
   F.   Executory Contracts and Unexpired Leases

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES
   A.   Who May Vote or Object
   B.   Votes Necessary to Confirm the Plan
   C.   Liquidation Analysis
   D.   Feasibility

**V.    EFFECT OF CONFIRMATION OF PLAN**
     **A.    DISCHARGE OF DEBTOR**
     **B.    Modification of Plan**
     **C.    Final Decree**

**I.    INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the small business chapter 11 case of **THOMAS MECHANICAL CORPORATION** (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the **Small Business Plan of Reorganization** (the "Plan") filed by **THOMAS MECHANICAL CORPORATION** on March 31, 2009. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 5-6 of this Disclosure Statement. [General unsecured creditors are classified in Class 3, and will receive a distribution of 15% of their allowed claims, to be distributed in year 5 of the Plan]

     **A.    Purpose of This Document**

This Disclosure Statement describes: The Debtor and significant events during the bankruptcy case, How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed), Who can vote on or object to the Plan, What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan, Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and The effect of confirmation of the Plan. Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

     **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

          1.    *Time and Place of the Hearing to Approve This Disclosure Statement  Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____, at _____, in Courtroom __, at the Dirksen Federal Building, 219 S. Dearborn St., Chicago, IL 60604.

          2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to [insert address]. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

   3. *Deadline For Objecting to the [Adequacy of Disclosure and] Confirmation of the Plan*

Objections to [this Disclosure Statement or to] the confirmation of the Plan must be filed with the Court and served upon [insert entities] by [insert date].

   4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact [insert name and address of representative of plan proponent].

**C. Disclaimer**

*The Court has [conditionally] approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. [The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until __.]*

**II.  BACKGROUND**

   **A.  Description and History of the Debtor's Business**

Thomas Mechanical Corporation is a commercial plumbing company. The company was established in 1991. The company is a signatory of Local 130 U. A. This means that all of the plumbers that work for Thomas Mechanical Corporation must be members of Local 130. The company works mainly as a sub contractor to a General Contractor. Thomas Mechanical Corporation has done many substantial plumbing installations, most notably the new culinary and theater building at the new Kennedy King College, and the only Wal-Mart in the city of Chicago as well as many others.

   **B.  Insiders of the Debtor**

Leona Thomas is the President and owner of Thomas Mechanical.

   **C.  Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were:

**Leona Thomas - President**

The Managers of the Debtor during the Debtor's chapter 11 case have been:

**Leona Thomas - President**

After the effective date of the order confirming the Plan, **Leona Thomas** will remain the President of Thomas Mechanical.

   **D.  Events Leading to Chapter 11 Filing**

Thomas Mechanicals' financial difficulties began in 2005 when the price of copper, cast iron and lead started increasing. Copper is the largest single expense after labor for Thomas Mechanical

B25B (Official Form 25B) (12/08) - Cont. 4

Corporation. The company operates within fixed price contracts, typically with no escalation in pricing allowed. This worked fine until the price of copper started to skyrocket. The price of copper more than doubled. The company had already submitted bids that had been accepted and contracts had been signed. There is always some room in the pricing for increases in materials, but there was no way to anticipate the copper increases that were coming. 2006 was the largest year in terms of revenue in the history of the company, which meant that it had a lot of work. It was also the largest year in terms of labor and materials. One of the large projects that was bid on and should have started in 2005 did not begin until 2006. This necessitated hiring additional plumbing staff that was hired right out of the plumbers' hall. Many of these plumbers did not perform up to our regular standards.

Also, one of the big problems that Thomas Mechanical had experienced is the delay in getting paid on some projects. Thomas Mechanical completed Kennedy King College project at the end of 2007, and the payment was not available until 2009. It took Thomas Mechanical so long to get paid on the Wal-Mart project that it ruined its relationship with a supplier. Thomas Mechanical could not pay them on time, however the bill was paid eventually when the money was released, causing elimination of the supplier, since it would no longer extend any credit. Such occurrences affected Debtor's ability to competitively shop for materials. Further, in order to get paid, Debtor had to accept less money, and Wal-Mart or the General Contractor did not pay any of the late fees or penalties that it incurred.

When Thomas Mechanical was not able pay it major material suppliers timely, it incurred 20% interest payments on approximately $500,000 in materials.

Thomas Mechanical Corporation had a job called Roosevelt Square with Marous Brothers Construction-Urban Quest Joint Venture. This was a large condo development located on Roosevelt and Racine in Chicago. The parent company was located in Ohio. After numerous difficulties with the construction, which resulted in very large back charged to Thomas Mechanical, thus diminishing its potential profits, Thomas sued Marous Brothers in Ohio, but had to abandon the suit simply because it was much smaller then the contractor it was fighting and could no longer afford the legal fees.

This combination of material increases, inefficient labor, huge interest incurred and not getting paid on a job, and not getting paid timely, resulted in Thomas' inability to pay its debts timely. It attempted to get some relief on the interest it was incurring, but the material supplier would not relent.

Since encountering these difficulties, Thomas Mechanical Corporation has borrowed money to try to stay afloat. Leona Thomas, the owner and president of the company, sold some personal property, liquidated her personal retirement fund, and took a huge pay cut in 2007 to keep the company afloat. The company is still operating and 2008 was a good year.

Thomas Mechanical has made up some ground. Prior to filing for Chapter 11, it repaid most of its IRS debt it started paying on the union debt, as well as its only secured creditor, Chase Bank. However, it found that paying everyone at once was not possible; as the material suppliers wanted payment at the same time it was paying the Union, Chase and the IRS. Thomas Mechanical was looking for "breathing room" to repay its creditors, which is why it filed for Chapter 11 protection.

   E.   **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### F. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### G. Current Financial Conditions

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit B.

## III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

#### 1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Professional Fees, as approved by the Court. | **$20,000.00** | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $1039.00 | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $5,000.00 | Paid in full on the effective date of the Plan |
| TOTAL | | |

B25B (Official Form 25B) (12/08) - Cont. 6

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| WT-FICA | $3316.77 | 6/30/2008 | Claim will be paid in full in 1st month of the Plan |

**C.    Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| **Class 1** | *Secured claim of:* **Chase Bank** Collateral Description: **All Debtor's Assets** Allowed Secured Amount = **$244,000.00** Principal owed $244,000.00 | **No** | Impaired | [Monthly] payment = **$5,542.47** <br><br> Pmts Begin = **1st Month** <br><br> Pmts End = **48th Month** <br><br> Interest rate % = **6%** |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **Class 2** | The claim of Plumbers Pension Fund, Plumbers Welfare Fund Trust Fund for Apprentice, Chicago Journeymen Plumbing Council, to the extent it is allowed, under Debtor's obligations as set forth in the Installment Note and Audit Liability only. | Impaired | [Monthly] payment = **$4418.00** <br><br> Pmts Begin = **1st Month** <br><br> Pmts End = **48th Month** |

      3.    *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class 3 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **Class 3** | General Unsecured Class | Impaired | Monthly payment = **$9,507.5** <br> Pmts Begin = **49th Month** <br> Pmts End = **60th Month** <br> Estimated percent of claim paid = **15%** |

      4.    *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **Class 4** | Equity interest holders | Impaired | **Equity interest holders will not receive distribution under the Plan** |

    **D.**    **Means of Implementing the Plan**

      1.    *Source of Payments*

Payments and distributions under the Plan will be funded from operations of Thomas Mechanical Corporation

      2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|
| **Leona Thomas** | **Yes** | **President and Owner** | **$200,000.00** |

### E. Risk Factors

The proposed Plan has the following risks:

Further downturn in economy affecting existing and future contracts, significant increases in costs of materials, significant increases in Union dues.

### F. Executory Contracts and Unexpired Leases

The Plan, in 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes **1, 2 and 3** are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

#### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was* **12/19/2008** *.*

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the Court;

holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

    C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Under the liquidation analysis, the unsecured creditors would receive $0.00. A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

    D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

    1.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must show that it will have enough cash over the life of the Plan to make the required Plan payments. The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $**114,179.59 in year one of the plan, $134,224.29 in year two of the plan, $141,886.70 in year three of the plan, 164,924.46 in year four of the plan, and $165,705.99 in year five of the plan available for Plan payments.**

The final Plan payment is expected to be paid on **60th Month of the Plan** .

Based on the fact that Debtor is on the accrual payment system, where the Debtor often does not receive its payments until 90 days after performance, as well as faltering economy where the Debtor cannot predict which contracts remain, and which cease to exist, Debtor has proposed a 75% discount on its projected 5-year income, reflected in the above amounts.

**V.    EFFECT OF CONFIRMATION OF PLAN**

    A.    **DISCHARGE OF DEBTOR**

<u>Discharge.</u> On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C. Final Decree

Once the estate has been fully or substantially administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

/s/ Leona F. Thomas
**THOMAS MECHANICAL CORPORATION**
[Signature of the Plan Proponent]

/s/ Forrest L. Ingram
**Forrest L. Ingram 3129032**
[Signature of the Attorney for the Plan Proponent]

**EXHIBIT A**
**EXHIBIT B**

# EXHIBIT C
## Thomas Mechanical Corporation

**Liquidation Analysis**

| ASSETS | FMV | Forced Sale Value |
|---|---|---|
| **Accounts/Cash** | | |
| Accounts Receivable | $138,566.22 | $138,566.22 |
| Balance in all Accounts | $828,873.00 | $82,873.00 |
| **Office Equipment** | | |
| 2 Office Computers | $400.00 | $50.00 |
| 3 Office Printers | $300.00 | $50.00 |
| Desks | $200.00 | $50.00 |
| Telephone System | $3,000.00 | $600.00 |
| 2 Shredders | $75.00 | $40.00 |
| 4 file cabinets | $200.00 | $50.00 |
| Drafting Table | $200.00 | $50.00 |
| **Plumbing Equipment** | | |
| Copper Grooving Machine | $419.00 | $200.00 |
| K1500 Rodding Machine | $800.00 | $300.00 |
| K50 Rodding Machine (2) | $600.00 | $200.00 |
| Coring Machine | $500.00 | $100.00 |
| Threader | $600.00 | $200.00 |
| Rodder | $800.00 | $200.00 |
| Cut Off Saw | $300.00 | $100.00 |
| Concrete Saw Blade | $50.00 | $10.00 |
| **Vehicles** | | |
| 2000 GMC Sierra 2500 | | $3,000.00 |
| 2001 GMC W3500 W/Tilt Cab | | $10,000.00 |
| 2004 Excavator & Trailer | | $16,000.00 |
| 2001 Chrysler PT Cruiser | | $3,000.00 |
| | | |
| Liens (Chase Bank) | | -$245,000.00 |
| **Total Assets at Liquidation Value** | | **$10,639.22** |
| | | |
| **LESS Chapter 7 Trustee Fees** | | -$10,000.00 |
| | | |
| **LESS Projected Unclassified Claims:** | | |
| Attorney Fees | | -$20,000.00 |
| Accountant Fees | | -$5,000.00 |
| | | |
| **TOTAL AVAILABLE FOR UNSECURED CREDITORS** | | **-$24,360.78** |

**EXHIBIT D**
**Thomas Mechanical Corporation**

|  | 2009<br>Year 1 | 2010<br>Year 2 | 2011<br>Year 3 | 2012<br>Year 4 | 2013<br>Year 5 |
|---|---|---|---|---|---|
| Business Income | 2,985,000.00 | 3,164,100.00 | 3,353,946.00 | 3,555,182.76 | 3,768,493.73 |
| Outside Services | 100,000.00 | 103,000.00 | 106,090.00 | 109,272.70 | 112,550.88 |
| Other job costs | 1,530.00 | 1,575.90 | 1,623.18 | 1,671.87 | 1,722.03 |
| Plumber Costs | 1,204,000.00 | 1,264,200.00 | 1,327,410.00 | 1,393,780.50 | 1,463,469.53 |
| Payroll Taxes | 119,630.00 | 125,611.50 | 131,892.08 | 138,486.68 | 145,411.01 |
| Union Costs | 466,854.00 | 532,213.56 | 606,723.46 | 691,664.74 | 788,497.81 |
| Plumbing Materials | 450,000.00 | 455,000.00 | 477,750.00 | 501,637.50 | 526,719.38 |
| Permits | 3,500.00 | 3,850.00 | 4,235.00 | 4,658.50 | 5,124.35 |
| Worker's Compensation | 84,575.60 | 84,576.00 | 84,576.00 | 60,000.00 | 60,000.00 |
| Payroll Processing Expense | 1,080.00 | 1,112.40 | 1,145.77 | 1,180.15 | 1,215.55 |
| Accounting Services | 2,000.00 | 2,100.00 | 2,205.00 | 2,315.25 | 2,431.01 |
| Professional Seminars | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| Plans & Specifications | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Association Fees | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| US Trustee Fees | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| Legal Fees | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Donations | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 |
| Entertainment | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| Business Insurance | 7,118.00 | 7,473.90 | 7,847.60 | 8,239.97 | 8,651.97 |
| Interest Expense |  |  |  |  |  |
| Bank Fees |  |  |  |  |  |
| Office Usage Expense | 38,000.00 | 38,000.00 | 38,000.00 | 38,000.00 | 38,000.00 |
| Office Payroll | 260,000.00 | 267,800.00 | 275,834.00 | 284,109.02 | 292,632.29 |
| Bobcat Lease | 5,911.28 | 0.00 | 0.00 | 0.00 | 0.00 |
| Automobile Expense | 15,000.00 | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| Business Taxes | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 |
| Office Expense | 26,234.00 | 27,021.02 | 27,831.65 | 28,666.60 | 29,526.60 |
| Telephone Expense | 12,861.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Total Expenses | 2,832,893.88 | 2,985,134.28 | 3,164,763.73 | 3,335,283.48 | 3,547,552.40 |
| Available to pay claims (yearly) | 152,106.12 | 178,965.72 | 189,182.27 | 219,899.28 | 220,941.32 |
| **Discounted by 75%** | **114,079.59** | **134,224.29** | **141,886.70** | **164,924.46** | **165,705.99** |
| **Monthly at 100%** | **12,675.51** | **14,913.81** | **15,765.19** | **18,324.94** | **18,411.78** |
| **Monthly at 75%** | **9,506.63** | **11,185.36** | **11,823.89** | **13,743.70** | **13,808.83** |

**B25B (Official Form 25B) (12/08) - Cont.** 15